UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KEITH W. RABIDUE,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTY OF BONNER, BONNER COUNTY DEPUTY SHERIFF CHRIS BONNER, DEPUTY STEVE CARL, and K-9 KAI, SARGENT T. REYNOLDS, DEPUTY D. OSBORN, DEPUTY JOHNSON, DEPUTY J. THOMPSON, DEPUTY S. WERGER, CITY OF PRIEST RIVER, and PRIEST RIVER OFFICER TANNER BODIE,<br><br>        Defendants. | Case No. 2:20-cv-00529-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Before the Court are a motion for summary judgment brought by the city defendants, Dkt. 45, and a motion to dismiss brought by the county defendants, Dkt. 55. For the reasons explained below, the Court will grant both motions.

**RELEVANT BACKGROUND**

On April 20, 2019, City of Priest River Police Department Officer Tanner Bodie responded to a call from Bonner County Dispatch. *Complaint* at ¶ 3.1, Dkt.

1. After Officer Bodie had some interaction with Plaintiff Keith Rabidue, Deputy Chris Bonner from the Bonner County Sheriff's Office arrived on scene. *Id.* at ¶¶ 3.5–3.9. Mr. Rabidue went inside the house and the law enforcement officers followed him. *Id.* at ¶¶ 3.11–3.12. The three of them had a physical altercation. *Id.* at ¶¶ 3.13–3.28.

An hour later, and after some interaction with Deputy Carl, Mr. Rabidue was detained and arrested. *Pl. Supp. Br.* at 3, Dkt. 73. He was charged with battery on a law enforcement officer and resisting arrest. *Cnty. Motion* at Exs. A, B, Dkt. 45-4. On September 27, 2019, Mr. Rabidue entered conditional guilty pleas to two counts of battery on a peace officer and one count of resisting and obstruction in criminal case *State of Idaho v. Keith William Rabidue*, CR09-19-1579, in the First Judicial District in and for the Bonner County. *Decl. of Douglas Phelps*, Ex. E, Dkt. 62. The conditional part of the plea concerned preserving Mr. Rabidue's right to pursue civil remedies arising from the incident. *Id.* After pleading guilty, Mr. Rabidue appealed his conviction to the Idaho Court of Appeals. *Cnty. Motion* at Ex. C. That court upheld Mr. Rabidue's conviction. *Id.*

On November 19, 2020, Mr. Rabidue filed this lawsuit, alleging federal law claims of excessive force, unlawful entry, and unlawful imprisonment pursuant to 42 U.S.C. § 1983, and state law claims of burglary, outrageous conduct, and self-

defense based on the events of April 20, 2019. *Complaint*, Dkt. 1. City defendants now seek summary judgment on all claims and county defendants seek dismissal of all claims.

**LEGAL STANDARD**

**A.    Summary Judgment**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Where, as here, the party moving for summary judgment would not bear the burden of proof at trial, that party may prevail simply by "pointing out to the district court[] that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any *material* fact—a fact "that may affect the outcome of the case." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a

grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to a material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In evaluating whether the moving party has met this burden, the Court must view the evidence in the light most favorable to the non-moving party and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).

Once the moving party has met its burden, the non-moving party carries the burden to present evidence showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 323. The non-moving party must go beyond the pleadings and show through "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Id.* at 324.

## B.    Motion to Dismiss

A complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when it pleads facts that allow the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at

556. The plausibility standard is not akin to a "probability requirement," but it asks

for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a

complaint pleads facts that are "merely consistent with" a defendant's liability, it

"stops short of the line between possibility and plausibility of entitlement to relief."

*Id.* at 557 (quotation omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.* "Detailed factual allegations" are not

required, but a plaintiff must offer "more than . . . unadorned, the-defendant-

unlawfully-harmed-me accusations." *Id.* (cleaned up). That is, a plaintiff must

provide specific facts supporting the elements of each claim and must allege facts

showing a causal link between each defendant and plaintiff's injury or

damages. *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Alleging "the

mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

The Court must dismiss a cause of action for failure to state a claim upon

which relief can be granted. Fed. R. Civ. P. 12(b)(6). "On a Rule 12(b)(6) motion

to dismiss, the court accepts the facts alleged in the complaint as true, and

dismissal can be based on the lack of a cognizable legal theory or the absence of

sufficient facts alleged." *Yoshikawa v. Seguirant*, 41 F.4th 1109, 1114 (9th Cir.

2022) (citations, quotations, and alteration omitted).

## ANALYSIS

The motions before the Court have several overlapping issues. However, each requires independent analysis because of distinct facts and, more importantly, differing legal standards. The Court will first address preliminary matters common to both motions, then turn the city defendants' motion for summary judgment, and then resolve the county defendants' motion to dismiss.

### A.    Preliminary Matters

### 1.  Judicial Notice of State Court Case

Defendants ask the Court to take judicial notice of Mr. Rabidue's Bonner County criminal case under Federal Rule of Evidence 201. Mr. Rabidue agrees that it is appropriate to do so. *See Resp. to Ctny. Motion* at 8, Dkt. 61. So does the Court.

The Court may take judicial notice of matters of public record and government documents available from reliable sources. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). A court may take judicial notice of another court's opinion "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Id.* at 690 (quotation and citation omitted). Here, the Court takes notice of several documents in *State of Idaho v. Keith William Rabidue,* CR09-19-1579: the plea

agreement in the case (Dkt. 62), the two judgments of conviction in the case (Dkt. 45-4), and the Court of Appeals decision affirming the conviction (Dkt. 45-4).

### 2. Judicial Estoppel

Mr. Rabidue argues repeatedly that because in the underlying state case, he "took a conditional plea that expressly provided that his right to pursue a civil remedy was preserved," Defendants' position that the claim is barred "violate[s] the principles of judicial estoppel." *Pl. Supp. Br.* at 2, Dkt. 73; *see also Resp. to Cnty. Motion* at 8–9. That argument fails completely.

Judicial estoppel applies only when a particular litigant "takes a position incompatible with one the litigant has previously taken." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 603 (9th Cir. 1996). Here, Mr. Rabidue has failed to show that the city and county defendants are the same parties that negotiated the plea agreement with him. Even more significantly, Mr. Rabidue has not cited any authority that would permit the Court to ignore the doctrine of *Heck v. Humphrey* on the basis of conditions stated in a plea agreement. The plea agreement, at best, preserved his right to pursue a civil remedy. In filing this suit, he has exercised that right. But the plea agreement did not and could not guarantee the success of his suit under any of the applicable doctrines, including *Heck.* The Court is bound to follow the applicable federal civil rights law, not a vague

provision in a state court plea agreement.

### 3.  State Law Causes of Action

The parties agreed that the Court could resolve these motions on the papers, without oral argument. The Court issued an order giving the parties an option to file supplemental briefing addressing questions that would have been addressed at oral argument. Dkt. 71.

In that order, the Court observed that "the complaint asserts two state law claims: burglary (Count VII) and outrageous conduct (Count IX). The burglary claim cites to a state criminal statute and the outrageous conduct claim does not cite to any statute. What exactly are the civil causes of actions brought here?" Dkt. 71. In his supplemental briefing, Mr. Rabidue elected not to respond to the inquiry. *Pl. Supp. Br.*, Dkt. 73. The Court cannot find any authority that indicates that these claims exist under state or federal law. It will therefore grant summary judgment to the city defendants on both of those claims and dismiss these claims against the county defendants.

### B.    City's Motion for Summary Judgment

The city defendants move for summary judgment on all claims against the city and Officer Bodie. The Court will grant the motion.

### 1.  *Heck* Bar to § 1983 Claims.

The city defendants argue several of Mr. Rabidue's claims are barred by the

*Heck* doctrine. Under *Heck*, a § 1983 action "is barred if – but only if – success in the action. . . would necessarily imply or demonstrate that the plaintiff's earlier conviction was invalid." *Lemos v. Cnty. of Sonoma*, 40 F.4th 1002, 1006 (9th Cir. 2022) (en banc) (internal quotations and citation omitted). To overcome this bar a plaintiff must show either that the action, if successful, would not "demonstrate the invalidity of an outstanding criminal judgment" or "that the conviction or sentence has already been invalidated." *Id.* at 1005 (quoting *Heck v. Humphrey*, 512 U.S. 477 at 478–79, 486–87 (1994)). Mr. Rabidue does not dispute that his convictions are valid, so *Heck* will bar his § 1983 claims unless his success would not demonstrate or imply the invalidity of his convictions. "To decide whether success on a section 1983 claim would *necessarily* imply the invalidity of a conviction, we must determine which acts formed the basis for the conviction. When the conviction is based on a guilty plea, we look at the record to see which acts formed the basis for the plea." *Id.* at 1006.

This case involves three convictions including, as relevant to the claims against Officer Bodie, two counts of battery on an officer. *Judgment*, Exhibit A, Dkt. 45-4. As applied in this case, Idaho Code § 18-915 sets out four elements for that offense: (1) battery, (2) upon a law enforcement officer, (3) while the officer was engaged in the performance of their duties, and (4) the defendant knew or

reasonably should have known the victim was a law enforcement officer. Idaho

Code § 18-915; Idaho Criminal Jury Instruction 1212I.  The state court criminal

convictions for battery and the § 1983 claims against Officer Bodie involve the

same, singular event: officers attempted to restrain and ultimately arrested Mr.

Rabidue in response to the battery on two officers. *See Beets v. Cnty. of Los*

*Angeles*, 669 F.3d 1038, 1042 (9th Cir. 2012) ("An allegation of excessive force by

a police officer would not be barred by *Heck* if it were distinct temporally or

spatially from the factual basis for the person's conviction.").

       *Heck* bars Mr. Rabidue's excessive force claim against Officer Bodie

because a conviction under Idaho Code § 18-915 requires that Mr. Rabidue's

criminal actions occurred while the law enforcement officer was engaged in the

performance of their duties. "The use of excessive force is not within the

performance of a law enforcement officer's duty.*" Sanders v. City of Pittsburg*, 14

F.4th 968, 972 (9th Cir. 2021); *State v. Bishop*, 203 P.3d 1203, 1216 (Idaho Ct.

App. 2008) ("[A]n unlawful act is not considered a duty" under § 18-705); *State v.*

*Tiffany*, No. 37636, 2011 WL 11048163 at *1 (Idaho Ct. App. October 12, 2011)

(unpublished opinion) (holding *Bishop*'s definition of "duties" applies to use of

duties in Idaho Code § 18-915(3)(b)). If Mr. Rabidue's claim of excessive force

were to succeed, it would require finding that Officer Bodie used excessive force

and, thus, acted unlawfully during the altercation that led to Mr. Rabidue's

convictions for battery. Such a finding would negate an element of the offense,

necessarily implying the invalidity of Mr. Rabidue's conviction.

The same is true of Mr. Rabidue's unlawful entry claim against Officer

Bodie. Mr. Rabidue alleges that Officer Bodie entered and restrained Mr. Rabidue

without the legal authority to do so. If Mr. Rabidue were to succeed on his

unlawful entry claim, it would necessitate the conclusion that Officer Bodie was

engaged in an unlawful act, which is not part of a law enforcement officer's duty.

*See Bishop*, 203 P.3d at 1216. In addition, to prevail on his unlawful imprisonment

claim, Mr. Rabidue "would have to demonstrate that there was no probable cause

to arrest him." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir.

1998). In this instance, that would require demonstrating he did not commit battery

and that he did not resist arrest – either of which would provide the requisite

probable cause to arrest Mr. Rabidue. *Id.* This showing would certainly

demonstrate the invalidity of all three of Mr. Rabidue's convictions. Because all

claims against Officer Bodie are barred by *Heck*, the Court will grant summary

judgment as to those claims.

### 2. *Monell* Liability

Mr. Rabidue alleges the city itself is liable for the allegedly unconstitutional

acts of its employees. To support a claim for municipal liability Mr. Rabidue must allege that "(1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [his] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). A prerequisite to *Monell* liability is an underlying constitutional violation by a municipal employee. *Edgerly v. City and Cnty. of San Francisco*, 599 F.3d 946, 960 (9th Cir. 2010).

Mr. Rabidue cannot prevail on his claim against the city because he cannot show an underlying constitutional violation by a city officer. His claims against Officer Bodie, the only individual city defendant, are barred by *Heck*. *See Edgerly*, 599 F.3d at 960 ("Because we conclude that the Officers did not inflict a constitutional injury on [the defendant] by arresting him, [the defendant] cannot maintain a § 1983 claim against the City on the basis of his arrest, regardless of whether the City had a policy of making arrests. . . where probable cause was lacking."). The *Heck* bar forecloses the conclusion that Officer Bodie committed a constitutional violation, thus, also foreclosing *Monell* liability based on those alleged violations.

Even if those claims were not *Heck* barred, Mr. Rabidue does not identify

any city policy that forms the basis of liability. "A policy is a deliberate choice to follow a course of action. . . made from among various alternatives by the official or officials responsible for establishing a final policy with respect to the matter in question." *Tsao v. Desert Palace, Inc*, 698 F.3d 1128, 1143 (9th Cir. 2012). "A section 1983 plaintiff may [also] attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992). Mr. Rabidue does not identify a written or formal policy, nor does he provide evidence of a pattern of similar violations showing the existence of an informal policy, custom, or practice. There is no issue of material fact as to either an underlying constitutional violation or the existence of a policy. Accordingly, the Court will grant summary judgment for all claims against the city defendants.

## C. The County's Motion to Dismiss

The county defendants filed a motion to dismiss all of Mr. Rabidue's claims against them. The Court will grant the motion.

### 1. Claims Against Deputies Reynolds, Johnson, Thompson, and Werger

Mr. Rabidue's complaint names several county deputies, but does not actually assert any specific claims against them. In the supplemental briefing order,

the Court inquired about these defendants: "The complaint names several Defendants—Reynolds, Osborn, Johnson, Thompson, and Werger—who are basically absent in the statement of facts and the briefing. Why are they named in the complaint?" Dkt. 71. In response, Mr. Rabidue explained, "Deputy Osborn reported on scene with Officer Bodie and illegally entered Mr. Rabidue's residence. See, e.g. Dkt 1, ¶¶ 6.61–6.65. Defendants Johnson, Thompson, and Werger were also on scene and directly observed and/or participated in Mr. Rabidue's constitutional violations. Further, the Defendants on scene failed to prevent the unlawful and vicious acts from occurring." *Pl. Supp. Br.* at 2, Dkt. 73.

In his Complaint and supplemental briefing, Mr. Rabidue did not make any specific claims against Deputies Reynolds, Johnson, Thompson, and Werger. See *Complaint*, Dkt. 1. Therefore, under the motion to dismiss standard, Mr. Rabidue has not stated a claim upon which relief may be granted. The Court will therefore dismiss the claims against these four defendants.

### 2. *Heck* Bar to § 1983 Claims.

The county defendants argue that Mr. Rabidue's claims are barred by the *Heck* doctrine. To overcome the *Heck* bar a plaintiff must show either that the § 1983 action, if successful, would not "demonstrate the invalidity of an outstanding criminal judgment" or "that the conviction or sentence has already been

invalidated." *Lemos*, 40 F.4th at 1005. Mr. Rabidue does not claim his convictions or sentence have already been invalidated, so he may proceed only if his claims would not imply or demonstrate the invalidity of his convictions.

Mr. Rabidue was convicted of two counts of battery on an officer. *Judgment*, Exhibit A, Dkt. 45-4. As previously stated, Idaho Code § 18-915 sets out four elements for that offense: (1) battery, (2) upon a law enforcement officer, (3) while the officer was engaged in the performance of their duties, and (4) the defendant knew or reasonably should have known the victim was a law enforcement officer. Idaho Code § 18-915; Idaho Criminal Jury Instruction 1212I. Mr. Rabidue was also convicted of resisting or obstructing an officer in violation of Idaho Code § 18-705. *Judgment*, Exhibit B, Dkt. 45-4. That offense also has four elements: (1) willfully (2) resisting, delaying, or obstructing (3) any public officer (4) in the discharge, or attempt to discharge, of any duty of his office. Idaho Code § 18-705; Idaho Criminal Jury Instruction 1260.

Mr. Rabidue's unlawful imprisonment claim is based upon the same event as his state court convictions: the altercation with officers at his house and his subsequent arrest. To show that he was unlawfully imprisoned, Mr. Rabidue would need to show that the deputies lacked probable cause to arrest him. *Cabrera*, 159 F.3d at 380 (holding to prevail on a claim for false imprisonment, the defendant

"would have to demonstrate there was no probable cause to arrest him"). Here, Mr. Rabidue would need to show he did not commit either battery and that he did not resist arrest, offenses to which he has already been convicted. This showing would certainly implicate the validity of all three of his convictions. As a result, Mr. Rabidue's unlawful imprisonment claim against the deputies is *Heck* barred.

So too are his unlawful entry and excessive force claims against Deputy Osborn. [1] Mr. Rabidue alleges that Deputy Osborn illegally entered his home along with Officer Bodie and subsequently "began a violent assault." *Complaint*, at ¶¶ 6.62–6.63. As such, his allegations against Deputy Osborn are based on the same factual basis as his battery convictions. *See Beets*, 669 F.3d at 1042 ("An allegation of excessive force by a police officer would not be barred by *Heck* if it were distinct temporally or spatially from the factual basis for the person's conviction."). One element of that offense is that the officers were engaged in the performance of their duties. Idaho Code § 18-915. Because "an unlawful act is not considered a duty," the officers must have been acting lawfully at the time of the batteries.

---

[1] Based on the factual history outlined in the Complaint, it seems that Mr. Rabidue is referring to Deputy Bonner in these allegations rather than Deputy Osborn. Mr. Rabidue, however, asserts in his supplemental briefing that Deputy Osborn entered his home illegally. *Pl. Supp. Br.* at 2, Dkt. 73. The Complaint does not include any claim against Deputy Bonner. To the extent Mr. Rabidue intended to include Deputy Bonner in his allegations, those claims would be *Heck* barred for the same reasons the claims against Deputy Osborn are barred.

MEMORANDUM DECISION AND ORDER - 16

*Bishop*, 203 P.3d at 1216. If Deputy Osborn and Officer Bodie illegally entered his home, then they were not acting lawfully. Similarly, if Deputy Osborn used excessive force during this encounter, he was not acting lawfully because "[t]he use of excessive force. . . is not within the performance of the officer's duty." *Sanders*, 14 F.4th at 971. Mr. Rabidue's success on either claim against Deputy Osborn would necessarily imply the invalidity of his convictions for battery and are therefore barred by *Heck.*

The more difficult question is whether Mr. Rabidue's excessive force claim against Deputy Carl is barred. Deputy Carl did not interact with Mr. Rabidue until an hour after the batteries on the two officers. Because the allegations of excessive force by Deputy Carl did not occur at the same time as the two batteries, there is separation between the "criminal action and the alleged use of excessive force." *Beets*, 669 F.3d at 1044–45. As such, the two battery convictions would not be implicated by a successful excessive force claim against Deputy Carl.

It follows that if Mr. Rabidue's claim is *Heck* barred, it is because success on his claim against Deputy Carl for excessive force would imply the invalidity of his conviction for resisting arrest under Idaho Code § 18-705. Neither the Complaint nor the parties' briefs identify the factual basis for Mr. Rabidue's plea for resisting arrest. There are several possible actions which could serve as the

factual basis for this conviction including Mr. Rabidue's refusal to comply with

Officer Bodie and Deputy's Bonner's request and the subsequent altercation. *State*

*v. Orr*, 335 P.3d 51, 53 (Idaho Ct. App. 2014) (affirming conviction where

defendant refused to comply with officer's request). Additionally, fleeing from his

home would support a conviction. *State v. Quimby*, 834 P.2d 906, 908 (Idaho Ct.

App. 1992) ("[The defendant] may not resist arrest by fleeing from the police when

they indicated their intent to place him under arrest."). As could his refusal to

comply with requests made by Deputy Carl. *Orr*, 335 P.3d at 53.

Here, there are at least "two different phases" of officer conduct. *Smith, v.

City of Hemet*, 394 F.3d 689, 698 (9th Cir. 2005). During the first phase, the

altercations between Mr. Rabidue and several officers took place, which forms the

basis for the battery convictions. The second phase, however, took place an hour

later and involved some sort of interaction between Mr. Rabidue and Deputy Carl.

Mr. Rabidue's conviction for resisting arrest could be based solely upon his actions

in the first phase. If that is the case, then Mr. Rabidue's claim of excessive force

against Deputy Carl in the latter phase of the encounter would not implicate the

invalidity of a conviction based on the first phase. *See Hooper v. Cnty. of San

Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011) (*Heck* does not bar an excessive force

claim "when the conviction and the § 1983 claim are based on different actions

during one continuous transaction." (internal quotations omitted)).

The fact that Mr. Rabidue did not distinguish between any of his interactions with law enforcement either in the pleadings or in his state court appeal is irrelevant to the *Heck* analysis. Rather, the determination turns on the factual basis in the state court record. The Ninth Circuit's decision in *Sanders* clearly illustrates this principle. *Sanders*, 14 F.4th at 971–72. In comparing the record in *Sanders* with that in *Hooper*, the Ninth Circuit concluded in *Hooper* "the record was silent on which act or acts formed the basis of her conviction" whereas in *Sanders* the defendant "stipulated to the factual basis for his conviction encompassed all three instances of resistances" identified in the transcript. *Id.* Here, the record is silent. "Defendants have identified nothing in the record that shows the specific factual basis for [the plaintiff's] misdemeanor conviction. Without such information this Court cannot determine that [the plaintiff's] claim of excessive force in this case would call into question the validity of his. . . conviction." *Reese v. County of Sacramento*, 888 F.3d 1030, 1046 (9th Cir. 2018). Accordingly, Mr. Rabidue's claim against Deputy Carl is not barred by *Heck*.

That said, Mr. Rabidue's excessive force claim does not meet the pleading requirements under *Iqbal* and *Twombly*. Claims of excessive force are analyzed under the Fourth Amendment's "objective reasonableness standard." *Brooks v.*

*Clark County*, 828 F.3d 910, 920 (9th Cir. 2016) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). To state a claim for excessive force, the plaintiff must allege facts, which if true, show that the defendants' conduct was "objectively unreasonable in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). In evaluating the reasonableness of an officer's conduct, courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Id.* at 396. Courts should consider "the facts and circumstances of each particular case including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Id.*

The Complaint lacks any specific factual allegations against Deputy Carl. Indeed, the Complaint combines the allegations against Deputy Carl with those against other defendants. *Complaint* at ¶ 9.64, Dkt 1 (alleging the Officer Bodie, Deputy Osborn and Deputy Carl applied physical force "including multiple choke holds, multiple times being tasered, use of K-9 attack, and multiple striking blows."). It is thus impossible to determine the factual basis for the alleged use of force by Deputy Carl. The absence of specific allegations regarding the actual use of force is coupled with a lack of any factual allegations about "the facts and

circumstances" supporting the conclusion that the force was unreasonable.

The only allegations that the force applied was excessive are "conclusory allegations of law" that are "insufficient to defeat a motion to dismiss. *Adams v. Johnson*, 355 F.3d 1179, 1184 (9th Cir. 2004). Mr. Rabidue merely concludes that the force applied by Deputy Carl was unreasonable without any factual allegations to support the conclusion. In so doing, Mr. Rabidue expects the Court to fill in the factual gaps with inferences to support his claim. These inferences are unwarranted. Mr. Rabidue has alleged only that the Deputy Carl at some point applied some kind of force during an interaction with officers where Mr. Rabidue was later convicted of battery on an officer. Taking all the *factual allegations* as true, Mr. Rabidue alleges only "the mere possibility of misconduct," which is not enough to survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. The Court will grant county defendants motion to dismiss all claims against the individual deputies.

### 3. *Monell* Liability.

The county defendants have also moved to dismiss Mr. Rabidue's claim against the county. Mr. Rabidue's *Monell* claim is based upon the county's failure to adequately train and supervise its employees. For purposes of *Monell* liability, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons

with whom the police might come into contact." *Flores v. County of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

To survive a motion to dismiss "[u]nder this standard, [the plaintiff] must allege facts to show that the County. . . disregarded the known or obvious consequence that a particular omission in their training program would cause [municipal] employees to violate citizens constitutional rights." *Id.* at 1159 (internal quotations omitted). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference." *Tsao*, 698 F.3d at 1145 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Mr. Rabidue has not met this standard. He has failed to allege any pattern of conduct by county employees. Instead, his allegations show only that his arrest was "a single, isolated, or sporadic incident," which is not enough to support *Monell* liability. *Gant v. County of Los Angeles*, 772 F.3d 608, 618 (9th Cir. 2014). Mr. Rabidue has not alleged "a particular omission" in the county's training program and his claim appears to be based, at least in part, on allegations that the county was negligent in hiring, training, and supervising employees. *See Complaint* at ¶¶ 11.61–11.71, Dkt. 1. Mere negligence, however, does not give rise to a *Monell* claim. *Dougherty v. City of Covina*, 654 F.3d 892, 900–01 (9th Cir.

2011). The allegations in the Complaint amount to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 557. This is insufficient to survive a motion to dismiss.

Further, Mr. Rabidue has not alleged an underlying constitutional violation. "A plaintiff cannot succeed on a *Monell* claim without establishing an *officer*'s deprivation of a federal right." *Lockett*, 977 F.3d at 742. Mr. Rabidue's allegations against the individual county officers are either barred by *Heck* or fail to state a plausible claim. These allegations, then, cannot serve as the underlying constitutional violation for *Monell* liability. *Id.* Absent such a violation, there can be no liability for the municipality. Accordingly, Mr. Rabidue's *Monell* claim is dismissed.

### 4.  Leave to Amend

If a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (internal quotations omitted). Mr. Rabidue has not made a request, but the Court will grant leave to amend his excessive force claim against Deputy Carl and his *Monell* claim against the county.

All other claims are dismissed without leave to amend because amendment would be futile. The unlawful imprisonment claim as well as the claims against Deputy Osborn are *Heck* barred, so no additional factual allegations could change the fact of a legal bar. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment."). Similarly, Mr. Rabidue's claims for burglary and outrageous do not exist under state or federal law, so additional facts cannot cure the deficiencies. *Id.*

## ORDER

**IT IS ORDERED that:**

1. Defendants' Motion for Summary Judgment (Dkt. 45) IS GRANTED.

2. Defendants' Motion to Dismiss (Dkt. 55) is GRANTED.

3. The following claims are dismissed without prejudice and with leave to amend: (1) the excessive force claim against Deputy Carl and (2) the *Monell* liability claim against the county. Any amended complaint must be filed within (30) days from the date of this decision. If no amended complaint is filed in a timely manner, the Court will dismiss the entire case without further notice.

4. All other claims are dismissed without leave to amend.

**MEMORANDUM DECISION AND ORDER - 24**

DATED: October 2, 2023

B. Lynn Winmill
U.S. District Court Judge