UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KEITH RABIDUE,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF BONNER, et al.,<br><br>Defendants. | Case No. 2:20-cv-00529-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Steve Carl's and Bonner County's motion for summary judgment. Dkt. 85. The Court finds that oral argument on the motion will not significantly aid the decisional process, therefore, the Court will consider the motion without a hearing. For the reasons set forth below, the Court will grant the motion.

## BACKGROUND

The factual record for this claim is based almost exclusively on Deputy Carl's "Supplemental Narrative" submitted by the defendants in support of their motion. *See* Ex. A, Dkt. 97. Mr. Rabidue has not disputed Deputy Carl's account of the events in his response for summary judgment. His statement of facts details only the conduct of Officer Brodie, even though the Court has already resolved Mr. Rabidue's claims against Officer Brodie. Mr. Rabidue has not submitted any additional evidence to

**MEMORANDUM DECISION AND ORDER - 1**

support his claims against Deputy Carl or the County and, instead, relies only on Deputy Carl's narrative as submitted by the defendants. *See Response* at 5, 6, Dkt. 88. Deputy Carl's narrative is therefore undisputed.

As described by Deputy Carl, law enforcement was initially called to Mr. Rabidue's home to address a domestic dispute. Ex. A, Dkt. 87. When two officers arrived at Mr. Rabidue's home, he became combative. *Id.* This interaction escalated quickly when Mr. Rabidue punched one of the officers unconscious and fled his home on foot. *Id.* Deputy Carl arrived on the scene after this incident. *Id.*

After he was brought up to speed on Mr. Rabidue's conduct, Deputy Carl interviewed several individuals who lived nearby and suspected that someone may have recently entered their home. *Id.* During these interviews, he heard other officers giving verbal commands to someone. *Id.* Deputy Carl drove to the location of the other officers, where he saw them chasing an individual on foot through a grass field. *Id.* Despite the two officers pursuing the individual and giving commands to stop, the individual did not stop. *Id.* Deputy Carl believed this individual was Mr. Rabidue. *Id.*

Deputy Carl announced through his patrol vehicle's public address system that Mr. Rabidue was under arrest, ordered him to stop running, and warned he would release the patrol dog if Mr. Rabidue did not comply. *Id.* Mr. Rabidue continued to run. *Id.* Two other officers continued to pursue him until they cornered him near a fence line. *Id.* Deputy Carl ordered Mr. Rabidue to get on the ground and warned he

**MEMORANDUM DECISION AND ORDER - 2**

would release the patrol dog if Mr. Rabidue did not comply. *Id.* Mr. Rabidue, again, did not comply and, instead, moved into a heavily wooded area along the fence. *Id.* Deputy Carl, again, issued several clear canine announcements ordering Mr. Rabidue to get on the ground. *Id.* Mr. Rabidue did not comply and ignored Deputy Carl. *Id.* Deputy Carl then released the patrol dog. *Id.*

After the patrol dog made contact, Deputy Carl gained control of the dog. *Id.* Mr. Rabidue, rather than stay on the ground, stood up. *Id.* Deputy Carl told Mr. Rabidue to stay on the ground. *Id.* He did not comply. *Id.* Another officer used a taser, and Mr. Rabidue started to flee. *Id.* Deputy Carl told Mr. Rabidue to get on the ground, but he did not comply. *Id.* Deputy Carl again instructed the canine to make contact. *Id.* Shortly thereafter, law enforcement was able to detain Mr. Rabidue.

Mr. Rabidue initially brought claims against the City of Priest River and County of Bonner, as well as several officials from each municipality. In 2023, the City Defendants moved for summary judgment, and the County Defendants moved to dismiss. The Court granted both motions but granted Mr. Rabidue leave to amend his complaint with respect to the claims against Deputy Carl and the County. Mr. Rabidue filed an amended complaint, and the defendants now move for summary judgment on all claims against them. Mr. Rabidue opposes the motion.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim

or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any *material* fact—a fact "that may affect the outcome of the case." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In evaluating whether the moving party has met this burden, the Court must view the evidence in the light most favorable to the non-moving party and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).

Once the moving party has met its burden, the non-moving party carries the burden to present evidence showing there is a genuine issue for trial. *Celotex*, 477

U.S. at 323. The non-moving party must go beyond the pleadings and show through "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Id.* at 324.

## ANALYSIS

### A.  Excessive Force Claim Against Deputy Carl

The defendants argue summary judgment is warranted on Mr. Rabidue's excessive force claim against Deputy Carl because the force was reasonable, and he is entitled to qualified immunity. The Court agrees that Deputy Carl is entitled to qualified immunity.

Qualified immunity protects state officials from liability unless a plaintiff proves "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). To meet the "clearly established" requirement, existing precedent must articulate the right with enough particularity "that the contours of the right are clear to a reasonable official." *Reichle v. Howards*, 566 U.S. 658, 665 (2012) (internal quotation marks omitted). Mr. Rabidue has not offered, and the Court has not found, any case indicating that it is unlawful to use a police dog to assist in apprehending an individual suspected of a felony who is non-compliant and fleeing on foot after less intrusive means of apprehending the suspect have failed. Indeed, the case law suggests the opposite. As recently as 2024, the Ninth Circuit

MEMORANDUM DECISION AND ORDER - 5

explained:

> Our Court has considered whether it was clearly established that police officers violate a suspect's Fourth Amendment rights by "using minimal force at the beginning of an encounter and escalating the level of force employed, ultimately deciding to use a police dog when other methods were unsuccessful." *Hernandez v. Town of Gilbert*, 989 F.3d 739, 745 (9th Cir. 2021). In *Hernandez*—which considered law established as of May 5, 2016—we compared the facts of the immediate case to our precedents involving police dogs, observing that the suspect in *Hernandez* had been warned several times about the police dog, was not known to be armed or unarmed, and was evading arrest for a DUI. *Id.* at 744–45. On these facts, we concluded that our precedents did "not place 'beyond debate' whether [the] use of a police dog to facilitate [the suspect's] arrest under the circumstances of this case violated the Fourth Amendment."

*Hyer v. City and County of Honolulu*, 118 F.4th 1044, 1068 (9th Cir. 2024).

As in *Hernandez* and *Hyer*, Mr. Rabidue was evading arrest for a felony and refused to comply with verbal commands—even when warned that a police canine would be used. *Id*; *Hernandez*, 989 F.3d at 745. In all three cases, the police canine was only deployed when these less intrusive measures failed. Importantly, the threat to officers and the public presented by Mr. Rabidue was heightened compared to that in *Hyer* and *Hernandez* as Mr. Rabidue had already attacked another officer so severely that the officer lost consciousness. Accordingly, as in *Hernandez* and *Hyer*, it is not clearly established that it is unlawful to use a police dog to assist with apprehending an individual suspected of a felony who is non-compliant and fleeing on foot after less intrusive means of apprehending the suspect have failed. Deputy Carl is therefore entitled to qualified immunity and the defendants' motion is granted as to

**MEMORANDUM DECISION AND ORDER - 6**

the excessive force claim against Deputy Carl.

### B. *Monell* Claim against Bonner County

The Court will also grant the defendants' motion for summary judgment on Mr. Rabidue's *Monell* claim. A municipality may not be held liable under § 1983 for actions of its employees based on a theory of respondeat superior. *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Rather, under *Monell v. Dept. of Soc. Servs. Of City of New York*, 436 U.S. 658 (1978), "plaintiffs suing a municipal entity for damages under 42 U.S.C. § 1983 must show their injury was caused by municipal policy or custom." *Los Angeles County v. Humphries*, 562 U.S. 29, 30–31 (2010).

A plaintiff can make this showing in one of three ways. *Sabra v. Maricopa County Community College Dist.*, 44 F.4th 867, 883 (9th Cir. 2022). First, a municipality may be liable if it acted "pursuant to an expressly adopted official policy." *Id.* (quoting *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021)). Second, a municipality may be liable based on a "longstanding practice or custom," or, third, if "the individual who committed the constitutional tort was an official with final policy-making decision or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.*

Mr. Rabidue has presented no evidence that any one of these bases for liability exists here. His Amended Complaint alleges a failure to train theory, however, at

**MEMORANDUM DECISION AND ORDER - 7**

summary judgment a plaintiff must "go beyond pleadings" to show a genuine issue for trial. *Celotex*, 477 U.S. at 323. After reviewing the record, there is no evidence to create a material dispute of fact on Mr. Rabidue's *Monell* claim. Accordingly, the defendants' motion is granted.

## ORDER

**IT IS ORDERED that** the Defendants' Motion for Summary Judgment (Dkt. 85) is **GRANTED.**

DATED: October 22, 2025

_____
B. Lynn Winmill
U.S. District Court Judge